# Illinois Official Reports

## Supreme Court

---

### *In re Marriage of Zamudio*, 2019 IL 124676

---

| | |
|---|---|
| Caption in Supreme Court: | *In re* MARRIAGE OF LOUISE ZAMUDIO, Appellee, and FRANK OCHOA JR., Appellant. |
| Docket No. | 124676 |
| Filed | November 21, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Whiteside County, the Hon. John L. Hauptman, Judge, presiding. |
| Judgment | Appellate court judgment affirmed. Circuit court judgment reversed. Cause remanded. |
| Counsel on Appeal | Paul A. Osborn, of Ward, Murray, Pace & Johnson, P.C., of Sterling, for appellant. |
| | Louis F. Pignatelli, of Pignatelli & Associates, P.C., and Allison B. Fagerman, of Law Office of Allison B. Fagerman, P.C., both of Rock Falls, for appellee. |

Justices

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Burke and Justices Thomas, Garman, Karmeier, Theis, and Neville concurred in the judgment and opinion.

## OPINION

¶ 1    The sole issue raised in this appeal is whether permissive pension service credit based on time served in the military is marital or nonmarital property under the facts of this marriage dissolution action. The parties purchased permissive service credit in the Illinois State Retirement System during their marriage based on time the respondent served in the active duty military prior to the marriage. See 40 ILCS 5/14-104(j) (West 2016) (allowing purchase of pension service credit for up to four years of active duty military service); 40 ILCS 5/1-119(5.5), (7.5) (West 2016) (defining "permissive service" to include, in relevant part, "service credit purchased by the member" and "regular service" as "service credit earned by the member" that "does not include service credit purchased by the member"). The appellate court held that the pension credit is marital property because it was purchased during the marriage with marital funds. 2019 IL App (3d) 160537. For the following reasons, we affirm the appellate court's judgment and remand to the trial court for further proceedings.

¶ 2                        I. BACKGROUND

¶ 3    Petitioner Louise Zamudio, formerly known as Louise Ochoa, and respondent Frank Ochoa Jr. were married in January 2000. In May 2014, Louise filed a petition for dissolution of the marriage in the Whiteside County circuit court. The parties resolved most of the issues in the dissolution proceeding but could not agree on the division of Frank's Illinois State Retirement System pension. The parties disputed whether permissive service credit based on Frank's prior active duty military service was marital or nonmarital property.

¶ 4    The record shows that Frank served in the United States Air Force from 1974 to 1980. In August 1989, he began working for the Illinois State Police. In September 2006, the parties paid $4813.20 to the State Retirement System to purchase 24 months of permissive military service credit. In August 2011, they again paid $4813.20 to the State Retirement System to purchase the remaining 24 months of permissive military service credit. Frank retired from the Illinois State Police in August 2011, with 320 months of service credit, consisting of 263.5 months of regular service, 48 months of permissive service credit based on his active duty military service, 6 months of unused sick time, and 2.5 months of unused vacation time.

¶ 5    Frank began receiving monthly annuity payments from the State Retirement System in August 2011. As of September 2015, his monthly annuity payment was $9088.86. The permissive service credit purchased by the parties increased the monthly annuity payment by $1363.33. Accordingly, the monthly annuity payment would have been $7725.53 without the additional service credit. The parties agreed that Louise should receive 50% of the marital portion of the pension but disagreed on whether the marital portion included the amount attributable to the permissive service credit. Thus, as of September 2015, the amount in dispute

was $681.67 per month, or 50% of the $1363.33 increase in the monthly annuity payment resulting from the permissive service credit.

¶ 6    The trial court initially ruled that the permissive service credit was marital because it was earned or acquired during the marriage. In response to Frank's motion to reconsider, however, the trial court reversed its ruling and held that the permissive service credit was properly classified as nonmarital because "what was purchased to enhance the pension *** was military time earned prior to the marriage." The trial court ordered Frank to reimburse Louise in the amount of $4813.20, for her share of the marital funds used to purchase the permissive service credit.

¶ 7    In reversing the trial court's judgment, the appellate court observed that *In re Marriage of Ramsey*, 339 Ill. App. 3d 752 (2003), suggests that courts must determine whether a pension enhancement is "*derivative* of the right to receive a pension in the first place or if the enhancement is *nonderivative* in the sense that the enhanced portion is directly and solely attributable to nonmarital contributions and not subject to division." (Emphases in original.) 2019 IL App (3d) 160537, ¶ 18. The appellate court rejected Frank's argument that his eligibility for the permissive service credit stemmed entirely from his active duty military service completed 20 years prior to the marriage. 2019 IL App (3d) 160537, ¶ 19.

¶ 8    The appellate court instead held that Frank's entitlement to an enhanced pension benefit by purchasing the service credit derived from his entitlement to the pension in the first place. 2019 IL App (3d) 160537, ¶ 19. The appellate court further concluded that Frank did not acquire the permissive service credit at the time of his military service. Frank's military service had no relationship to his pension until he purchased the service credit during the marriage with marital funds. 2019 IL App (3d) 160537, ¶ 20. Accordingly, the appellate court held the permissive service credit was marital property and remanded to the trial court for an equitable apportionment of the pension. 2019 IL App (3d) 160537, ¶¶ 22-24.

¶ 9    Justice Schmidt dissented, asserting that "Frank enhanced a nonmarital asset with marital assets, and therefore, he must repay, and I believe has repaid, Louise for her share of those funds. The trial court got it exactly right. Frank's 48 months of military credit are no more marital property than are the 11 years of credit he earned for his Illinois State Police service prior to the marriage." 2019 IL App (3d) 160537, ¶ 28 (Schmidt, J., dissenting). The dissent maintained that enhancement of Frank's 48 months of military service with marital funds does not transmute his military service into marital property. 2019 IL App (3d) 160537, ¶ 32. Justice Schmidt, therefore, would have affirmed the trial court's judgment holding the permissive service credit is nonmarital property. 2019 IL App (3d) 160537, ¶¶ 32-33.

¶ 10    We allowed Frank's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. July 1, 2018)).

¶ 11                                              II. ANALYSIS

¶ 12    The only issue in dispute before this court is whether the permissive service credit purchased by the parties is marital or nonmarital property. Frank contends the permissive service credit is nonmarital because it is derived primarily from his active duty military service completed 20 years prior to the marriage. Frank maintains his military service is the primary and necessary element required to claim the permissive service credit and the credit cannot be considered acquired or earned during the marriage given that he served in the military many years before the marriage. Frank concludes that the monetary contributions made during the

marriage to purchase the permissive service credit do not transmute his military service into marital property.

¶ 13    Louise responds that Frank's military service, by itself, is not property. The permissive service credit enhancing Frank's pension was only acquired when it was purchased during the marriage. Louise contends that the permissive service credit derives from both Frank's prior military service and the monetary contributions made during the marriage. According to Louise, the permissive service credit is marital property because it was acquired during the marriage with marital funds.

¶ 14    In determining whether the permissive service credit is marital or nonmarital property, we must look to section 503 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503 (West 2016)), defining marital and nonmarital property, and the Illinois Pension Code (Pension Code) (40 ILCS 5/1-101 *et seq.* (West 2016)), providing for the permissive service credit. Accordingly, this case presents an issue of statutory construction.

¶ 15    Our primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. *Accettura v. Vacationland, Inc.*, 2019 IL 124285, ¶ 11. The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning. *Palm v. Holocker*, 2018 IL 123152, ¶ 21. When the language of a statute is clear and unambiguous, we must apply it as written, without resort to aids of statutory construction. *In re Marriage of Goesel*, 2017 IL 122046, ¶ 13. We may not depart from the plain statutory language by reading into a statute exceptions, limitations, or conditions not expressed by the legislature. *In re Marriage of Goesel*, 2017 IL 122046, ¶ 13. Questions of statutory construction are reviewed *de novo. Bank of New York Mellon v. Laskowski*, 2018 IL 121995, ¶ 12.

¶ 16    Section 503(a) of the Act provides, in pertinent part:

"For purposes of this Act, 'marital property' means all property, including debts and other obligations, acquired by either spouse subsequent to the marriage, except the following, which is known as 'non-marital property':

* * *

(6) property acquired before the marriage, except as it relates to retirement plans that may have both marital and non-marital characteristics;

***

(7) the increase in value of non-marital property, irrespective of whether the increase results from a contribution of marital property, non-marital property, the personal effort of a spouse, or otherwise, subject to the right of reimbursement provided in subsection (c) of this Section[.]" 750 ILCS 5/503(a) (West 2016).

¶ 17    Section 503(b) establishes a presumption that all property acquired during the marriage is marital, stating that

"(b)(1) [f]or purposes of distribution of property, all property acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage is presumed marital property. *** The presumption of marital property is overcome by showing through clear and convincing evidence that the property was acquired by a method listed in subsection (a) of this

Section or was done for estate or tax planning purposes or for other reasons that establish that a transfer between spouses was not intended to be a gift.

(2) For purposes of distribution of property pursuant to this Section, all pension benefits (including pension benefits under the Illinois Pension Code, defined benefit plans, defined contribution plans and accounts, individual retirement accounts, and non-qualified plans) acquired by or participated in by either spouse after the marriage and before a judgment of dissolution of marriage or legal separation or declaration of invalidity of the marriage are presumed to be marital property. A spouse may overcome the presumption that these pension benefits are marital property by showing through clear and convincing evidence that the pension benefits were acquired by a method listed in subsection (a) of this Section." 750 ILCS 5/503(b)(1), (2) (West 2016).

¶ 18        Finally, section 503(c)(2)(A) states:

"When one estate of property makes a contribution to another estate of property, the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation. No such reimbursement shall be made with respect to a contribution that is not traceable by clear and convincing evidence or that was a gift. The court may provide for reimbursement out of the marital property to be divided or by imposing a lien against the non-marital property that received the contribution." 750 ILCS 5/503(c)(2)(A) (West 2016).

¶ 19        The Act, therefore, generally distinguishes marital from nonmarital property based on when the property was "acquired," but it does not define that term. When a term is not defined by a statute, it is appropriate to look to dictionary definitions to determine its ordinary and popularly understood meaning. *In re Ryan B.*, 212 Ill. 2d 226, 232 (2004). Merriam-Webster's Dictionary defines "acquire" as "1: to get as one's own: a: to come into possession or control of often by unspecified means b: to come to have as a new or added characteristic, trait, or ability (as by sustained effort or natural selection). *** 2: to locate and hold (a desired object) in a detector." Merriam-Webster's Collegiate Dictionary 11 (11th ed. 2014). Black's Law Dictionary 26 (9th ed. 2009) defines the term as "[t]o gain possession or control of; to get or obtain."

¶ 20        In this case, Frank contends that the permissive service credit is nonmarital because it was acquired when he completed four years of active duty military service long before the marriage. He also suggests that the statutory monetary contributions made to purchase the permissive service credit may be reimbursed to the marital estate as provided in sections 503(a)(7) and 503(c)(2)(A).

¶ 21        Critically, while Frank contends his prior military service is the primary element required to establish the permissive service credit, the Pension Code does not award any benefit for prior military service alone. Rather, the permissive service credit at issue in this case is provided by section 14-104(j) of the Pension Code, stating in pertinent part:

"By paying the contributions otherwise required under this Section, plus an amount determined by the Board to be equal to the employer's normal cost of the benefit plus interest, but with all of the interest calculated from the date the employee last became a member of the System or November 19, 1991, whichever is later, to the date of payment, an employee may establish service credit for a period of up to 4 years spent in active military service for which he does not qualify for credit under Section 14-

- 5 -

105,[1] provided that (1) he was not dishonorably discharged from such military service, and (2) the amount of service credit established by a member under this subsection (j), when added to the amount of military service credit granted to the member under subsection (b) of Section 14-105, shall not exceed 5 years." 40 ILCS 5/14-104(j) (West 2016).

¶ 22    Thus, section 14-104(j) sets forth two requirements for establishing permissive credit for prior active duty military service: (1) up to four years of active duty service without a dishonorable discharge and (2) payment of the statutory monetary contribution. Although Frank served in the Air Force from 1974 through 1980, the parties did not pay the statutory monetary contributions required to establish the permissive service credit until 2006 and 2011, during the marriage.

¶ 23    In this case, the permissive service credit was not "acquired" under that term's ordinary and popularly understood meaning when Frank completed four years of active duty military service. Frank did not obtain or come into possession or control of the permissive service credit when he completed his active duty military service. To the contrary, Frank's prior military service, by itself, does not have any value relative to his Illinois pension under the Pension Code. The statutory monetary contribution required to purchase the permissive service credit is undoubtedly an essential requirement for acquiring that credit. Indeed, the Pension Code defines "permissive service" to include "service credit *purchased* by the member." (Emphasis added.) 40 ILCS 5/1-119(5.5) (West 2016). The military service, therefore, only made Frank eligible to purchase or "acquire" the permissive service credit through the monetary contribution required by the Pension Code. The permissive service credit was not "property acquired before the marriage," as required to fall under the exception to marital property contained in section 503(a)(6) of the Act. 750 ILCS 5/503(a)(6) (West 2016).

¶ 24    Frank, nonetheless, contends that the permissive service credit should be treated the same as his regular service time earned during his employment with the Illinois State Police prior to the marriage because his military service also occurred before the marriage. Frank maintains that service credit is earned or "acquired" solely by virtue of when the work was performed, not when monetary contributions are made.

¶ 25    The Pension Code, however, provides a clear distinction between regular service and permissive service credit purchased based on prior military service. The Pension Code states " '[r]egular service' does not include service credit purchased by the member." 40 ILCS 5/1-119(7.5) (West 2016). Further, "membership service" is defined as "[s]ervice rendered while a member of the System for which credit is allowable under this Article" (40 ILCS 5/14-103.13 (West 2016)) and is distinguished from "creditable service" that includes both "[m]embership service and the total service certified in prior or military service certificates, if any." 40 ILCS 5/14-103.15 (West 2016). Thus, the Pension Code clearly differentiates between regular service and permissive service credit. Those two types of service credit cannot be analogized under the terms of the Pension Code. Our decision in this case is based solely on section 14-104(j), providing for the permissive service credit at issue here.

---

[1]Section 14-105 allows service credit in specified circumstances without requiring contributions. 40 ILCS 5/14-105 (West 2016). That statutory provision is not at issue in this case.

¶ 26    At oral argument, Frank's counsel also argued that Frank's military service was a nonmarital asset, like physical property existing prior to the marriage, and the statutory monetary contributions only enhanced that existing asset. Under section 503(a)(7) of the Act, an increase in value of nonmarital property is also nonmarital, even if the increase results from a contribution of marital property. 750 ILCS 5/503(a)(7) (West 2016). The contribution of marital property may be reimbursed to the marital estate. 750 ILCS 5/503(c)(2)(A) (West 2016).

¶ 27    Frank's argument presumes that his military service is property. But, as noted previously, Frank's military service, by itself, had no monetary or property value in relation to his Illinois pension. According to the plain language of section 14-104(j) of the Pension Code, the permissive service credit is acquired only if both statutory requirements are met. The permissive service credit was only acquired when the monetary contributions were made in 2006 and 2011, with marital funds during the marriage. In fact, the permissive service credit would not have been acquired at all if both statutory requirements for obtaining it had not been met. Thus, we must reject Frank's argument that the monetary contributions only enhanced an existing asset because that argument is contrary to the plain language of the Pension Code.

¶ 28    We also note that the parties rely on the appellate court's decision in *Ramsey*. In that case, the appellate court considered whether pension enhancements resulting from early retirement incentives purchased by a party after dissolution of his marriage were marital property. *In re Marriage of Ramsey*, 339 Ill. App. 3d 752. *Ramsey* involved a different factual scenario and different statutory provisions establishing early retirement incentives. The holding in *Ramsey* was based on the early retirement incentives at issue in that case. See *In re Marriage of Ramsey*, 339 Ill. App. 3d at 766. Our decision in this case must be based on the specific statutory provisions at issue here. We, therefore, conclude that *Ramsey* is distinguishable and not helpful in deciding this case.

¶ 29    In sum, we do not disagree with Frank's argument that his military service was an essential requirement for obtaining the permissive service credit. In fact, as Frank contends, the permissive service credit was obtained primarily "by his sustained effort and his own exertions." The credit certainly could not have been obtained without Frank's military service, and we do not dispute his contention that the permissive service credit acknowledges and rewards active duty military service.

¶ 30    Nonetheless, as in all cases involving statutory construction, we are guided and constrained by the plain language of the applicable statutes. See *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 522 (2000). We cannot disregard the plain statutory language to reach a given result. Any change in the statutory language must come from the General Assembly, not this court. See *Bremer v. City of Rockford*, 2016 IL 119889, ¶ 34.

¶ 31    The statutory language controlling this case compels our decision that the relevant asset, *i.e.*, the permissive service credit, was "acquired" only after all requirements for obtaining the credit were satisfied, including payment of the statutory monetary contributions. See 40 ILCS 5/14-104(j) (West 2016) (setting forth prior active duty military service and payment of statutory monetary contributions as requirements for establishing permissive service credit). Here, there is no factual dispute on when the statutory requirements for establishing the permissive service credit were completed. It is undisputed that the monetary contributions to purchase the permissive service credit were made with marital funds during the marriage.

Accordingly, we conclude that the permissive service credit was acquired during the marriage and it is, therefore, marital property.

¶ 32                                            III. CONCLUSION
¶ 33        For the reasons stated above, we affirm the judgment of the appellate court and remand to the trial court for further proceedings.

¶ 34        Appellate court judgment affirmed.
¶ 35        Circuit court judgment reversed.
¶ 36        Cause remanded.