**2021 IL 125392**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 125392)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
CHARLES P. WISE, Appellee.

*Opinion filed April 15, 2021.*

JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Neville and Overstreet concurred in
the judgment and opinion.

Justice Michael J. Burke dissented, with opinion, joined by Justice Garman.

Justice Carter took no part in the decision.

## OPINION

¶ 1    Section 24-1.1(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-1.1(a)
(West 2014)) makes it unlawful for a person who has been convicted of a felony in

any jurisdiction to knowingly possess a firearm "on or about his person or on his land or in his own abode or fixed place of business." At issue in this appeal is whether the State proved defendant guilty of violating this section beyond a reasonable doubt when the evidence showed that a police officer found a gun near one of the passengers in the third row of a minivan that defendant happened to be driving. For the following reasons, we conclude that the State did not prove defendant's guilt beyond a reasonable doubt. Therefore, we affirm the appellate court's judgment.

¶ 2                                    BACKGROUND

¶ 3        In June 2015, shortly after 4 p.m., a police officer was driving a squad car on a highway in Henry County, Illinois, when a minivan sped past him in the opposite direction. The officer's radar unit showed that the van was traveling roughly 20 miles per hour over the speed limit. Using the next turnaround, the officer caught up with the minivan and conducted a traffic stop. Three occupants were seated inside the van: one sat in the driver's seat, another in the front passenger seat, and the third in the "very back" rear passenger seat. The driver, defendant Charles Wise, conceded that he had been speeding.

¶ 4        As the officer spoke with defendant, he detected the odor of burnt cannabis emanating from the van. The officer called for backup. After a second officer arrived, they conducted a probable cause search of the vehicle. The first officer found a firearm and two rounds of ammunition "in the rear passenger compartment [in] kind of like [a] little cupholder armrest, inside a glove." The gun was not in plain view before the officer moved the glove. Upon a search of defendant's handbag, the officer also found a large amount of prescription pills. On June 18, 2015, prosecutors charged defendant with unlawful possession of a firearm by a felon in violation of section 24.1-1(a) of the Code (*id.*) and unlawful possession of a substance containing oxycodone in violation of section 402(c) of the Illinois Controlled Substances Act (720 ILCS 570/402(c) (West 2014)). Defendant pled not guilty and waived his right to a jury trial.

¶ 5        The trial court conducted a bench trial in March 2016. The prosecution entered into evidence a certified copy of defendant's conviction for first degree burglary in Iowa from July 1995.

¶ 6        After recounting the details of the traffic stop, the officer testified that defendant told him that his brother owned the minivan. The officer further testified that defendant told him that he knew the gun was in the vehicle. According to the officer, defendant stated that the gun belonged to a friend of his who also borrowed the minivan from defendant's brother. The two passengers in the minivan, Jeffrey Montgomery and Jerry Horne, informed the officer that the gun did not belong to defendant.

¶ 7        The officer estimated that the gun was 5 to 10 feet away from defendant while he was in the driver's seat. The officer did not think it was possible for defendant to reach the gun from the driver's seat. Rather, Horne was seated closest to the firearm. The officer acknowledged that he never saw defendant hold the gun. He also did not think that the crime lab ever fingerprinted the weapon to determine whether defendant's fingerprints were on it. The officer further testified that defendant told him that he had had back surgery and that a physician prescribed the pills that the officer found.

¶ 8        After the State rested, defendant moved to dismiss the charge of unlawful possession of a firearm by a felon, arguing that the State failed to allege an element of the offense. Defendant noted that section 24-1.1(a), in relevant part, prohibits a felon from possessing a firearm on or about his person. Given where the gun was in relation to defendant when the officer stopped him, defendant contended that the State had not proven that the gun was on or about his person. The trial court denied his motion.

¶ 9        The trial continued, and Wade Burrell testified as the defense's first witness. He explained that he borrowed defendant's brother's minivan several times to run errands because it had "[g]reat storage space." Burrell testified that he owned the firearm at issue. He purchased it from a sports store in Iowa, and his receipt for the weapon was admitted into evidence. According to Burrell, he left the gun in defendant's brother's van sometime in May 2015. He placed it in a glove away from the driver's seat because, although he possessed a valid Firearm Owner's Identification Card, he did not have a concealed carry permit. According to Burrell, a sales associate at the sports store told him that the weapon needed to be "out of [his] reach" as he traveled. Burrell testified that he left the gun in the minivan

without retrieving it for several weeks. Because he had another weapon at his residence, he "didn't think of it."

¶ 10 Montgomery, one of the passengers in the minivan, testified that he, defendant, and Horne had traveled from Iowa to Kentucky to visit Montgomery's family. According to Montgomery, aside from the first 20 miles when Horne drove, defendant drove the rest of the trip. Montgomery denied knowing about the gun that was in the glove. Further, Montgomery testified that he heard defendant tell the officer that defendant did not know about the gun's presence.

¶ 11 Upon taking the witness stand, defendant explained that he traveled with two friends from Iowa to Kentucky and back. Defendant testified that, aside from the first 10 or so minutes of the trip, he drove the minivan. An officer stopped him for speeding in Illinois, which defendant acknowledged was accurate. However, defendant testified that he "had no idea" that the firearm was in the van. He assumed that the gun belonged to Burrell because he earlier told defendant that he had bought two pistols from a sports store and Burrell at times borrowed the van from defendant's brother. Defendant testified that he had never touched the firearm because he did not know that it was in the vehicle. And though he placed his bags in the trunk, defendant stated that he never sat in the third-row area where the gun was located. Defendant separately explained that he takes various prescription medications to treat conditions such as high blood pressure, diabetes, depression, and chronic back pain.

¶ 12 The trial court noted that defendant admitted to speeding; therefore, it found him guilty of that offense. On the charge of unlawful possession of a weapon by a felon, the trial court determined that Burrell's testimony that he purchased the gun, but then left it in defendant's brother's minivan, was "absurd." The court also stated that Montgomery testified that defendant "was back where the gun was" during the period that Horne drove. The court further credited the officer's testimony that defendant stated he knew the gun was in the van. Accordingly, the trial court determined that the State had met its burden of proving defendant guilty of unlawful possession of a weapon by a felon. However, the court concluded that reasonable doubt existed as to whether defendant had a valid prescription for the pills; therefore, it found him not guilty of that offense.

¶ 13    One month later, defendant filed a motion in arrest of judgment. He claimed that the State did not allege that he possessed the weapon on or about his person or in his own abode or fixed place of business, as required by the statute. A failure to allege an element of the offense, defendant insisted, was a fundamental defect that rendered the complaint void. Defendant also moved the trial court to reconsider its finding of guilt on the charge of unlawful possession of a weapon by a felon, noting that the weapon was not immediately accessible to him and that he did not have immediate and exclusive control over the area where it was found. The trial court denied defendant's motions. On March 31, 2017, the trial court sentenced defendant to two years' imprisonment and one year of mandatory supervised release.

¶ 14    On appeal, the court noted that under section 24-1.1(a) of the Code " '[i]t is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any *** firearm *** if the person has been convicted of a felony.' " 2019 IL App (3d) 170252, ¶ 14 (quoting 720 ILCS 5/24-1.1(a) (West 2014)). It further noted that this court had not yet construed the meaning of "on or about his person" under section 24-1.1(a) of the Code. *Id.* ¶ 15. That said, the appellate court observed that this court had defined "on or about his person" under predecessor provisions of a similar section of the Code as meaning that the firearm is on the person or " 'in such close proximity that it can be readily used as though on the person.' " *Id.* ¶ 21 (quoting *People v. Liss*, 406 Ill. 419, 422 (1950), and citing *People v. Niemoth*, 322 Ill. 51, 52 (1926) (" '[a]bout his person' means sufficiently close to the person to be readily accessible for immediate use")). The appellate court saw "no reason to give the phrase a different interpretation from the one established by" this court. *Id.*

¶ 15    The appellate court further explained that in section 24-1.1(a) the "legislature specifically listed the places where a felon is culpably in possession of a firearm, including 'on or about his person,' 'on his land,' 'in his abode,' and in his 'fixed place of business.' " *Id.* ¶ 20. The court reasoned that "[i]f the legislature had intended to impose liability for possession anywhere 'in his vehicle,' it would have included that language in the statute." *Id.* Thus, the appellate court focused on "whether the firearm was 'on or about' [defendant's] person rather than whether the firearm was located in the vehicle." *Id.*

¶ 16    The court noted that other appellate court decisions had reached different conclusions when construing section 24-1.1(a). *Id.* For instance, in *People v. Woodworth*, 187 Ill. App. 3d 44, 46 (1989), the court "held that 'on or about his person' equates to having in one's possession or possessing and interpret[ed] the phrase as if it is synonymous with the word 'possess.' " 2019 IL App (3d) 170252, ¶ 19. The appellate court here determined that that interpretation rendered "the phrase 'on or about his person' meaningless." *Id.* Instead, because the word "possess" and the term "on or about his person" were distinctly included in the statute, the appellate court found that each should be given its own meaning. *Id.*

¶ 17    Given its construction of the statute, the appellate court ruled that the State presented insufficient evidence to show the gun was on or about defendant's person as required by section 24-1.1(a) when the officer searched the vehicle. *Id.* ¶ 22. At the time the officer stopped and searched the minivan, defendant was driving. The officer discovered a firearm hidden inside a glove 5 to 10 feet behind the driver's seat. The officer testified that he did not believe it was possible for defendant to reach over and grab the gun from the driver's seat. Thus, the appellate court concluded, the gun was not "on or about" defendant's person at the time of the stop. *Id.*

¶ 18    The appellate court acknowledged Montgomery's testimony that "for a very short time at the beginning of the trip from Louisville," Horne drove while defendant sat in the backseat. *Id.* ¶ 23. His testimony left open the possibility that the firearm may have been "about" defendant's person during the earliest stages of the drive. *Id.* However, citing section 1-5(a)(1) of the Code (720 ILCS 5/1-5(a)(1) (West 2014)), the court noted that "Illinois has jurisdiction over a criminal case only when the offense is committed wholly or partly within the state." 2019 IL App (3d) 170252, ¶ 23. In this case, the court found, "the evidence appears clear that the 10 or 20 minutes [defendant] was in the backseat occurred in Kentucky or Indiana, not Illinois." *Id.* Thus, concluding that the State failed to prove defendant guilty beyond a reasonable doubt of unlawful possession of a weapon by a felon, the appellate court vacated his conviction. *Id.* ¶ 24.

¶ 19    The dissenting justice would have found the evidence sufficient to prove defendant guilty beyond a reasonable doubt, observing that, although he did not

own the minivan, he had been driving it for some time, had control over the van, and admitted knowledge of the presence of the gun. *Id.* ¶ 30 (Carter, J., dissenting).

¶ 20 This court allowed the State's petition for leave to appeal. See Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2019).

¶ 21 ANALYSIS

¶ 22 At issue is whether the State proved beyond a reasonable doubt that defendant knowingly possessed the firearm "on or about his person," as section 24-1.1(a) requires. To answer that question, this court must first interpret the meaning of the phrase "on or about his person."

¶ 23 Statutory interpretation presents a question of law that we review *de novo*. See *Accettura v. Vacationland, Inc.*, 2019 IL 124285, ¶ 11. Our primary objective when analyzing a statute is to ascertain and give effect to the legislature's intent. *Id.* "The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning." *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 36. "When the language of a statute is clear and unambiguous, we must apply it as written, without resort to aids of statutory construction." *In re Marriage of Zamudio*, 2019 IL 124676, ¶ 15. This court may not depart from the plain statutory language by reading in exceptions, limitations, or conditions not expressed by the legislature. *Id.*

¶ 24 In this case, defendant was convicted of violating section 24-1.1(a) of the Code. That provision reads:

"It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2014).

Under section 24-1.1(a), a felon is not allowed to knowingly possess a firearm "on" his person; in other words, he cannot have actual possession of a firearm. See, *e.g.*, *People v. Jones*, 2019 IL App (1st) 170478, ¶ 27 ("Actual possession is proved by testimony that the defendant exercised some form of dominion over the firearm,

such as that he had it on his person, tried to conceal it, or was seen to discard it."). Under section 24-1.1(a), a felon is also prohibited from knowingly possessing a firearm "about" his person; that is, he cannot have constructive possession of it. See, *e.g.*, *People v. Wright*, 2013 IL App (1st) 111803, ¶ 25 ("When *** the defendant is not found to have had actually possessed the gun, the State must prove he constructively possessed the gun.").

¶ 25        "[C]onstructive possession of a firearm may be shown where the person has knowledge of the presence of the weapon and exercises immediate and exclusive control over the area where the firearm is found." *People v. Brown*, 2020 IL 124100, ¶ 11; see *People v. Hammer*, 228 Ill. App. 3d 318, 323 (1992) ("constructive possession of a firearm by a felon is established by showing that defendant had knowledge of the weapon and that he exerted immediate and exclusive control over the area where the weapon was found").

¶ 26        Here, the officer testified that he did not see defendant physically possess the weapon or attempt to discard it, and his fingerprints were not retrieved from it. The State does not contend that defendant was in actual possession of the weapon. Therefore, the question is whether the State presented sufficient evidence to support defendant's conviction on a theory of constructive possession of the firearm.

¶ 27        Settled law provides that

"[w]hen determining whether the evidence against a defendant was sufficient to prove guilt beyond a reasonable doubt, the relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Hagberg*, 192 Ill. 2d 29, 33-34 (2000).

A criminal conviction will be set aside on appeal when the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. See *People v. Ehlert*, 211 Ill. 2d 192, 202 (2004).

¶ 28        As we noted above, "[t]o establish constructive possession, the State must prove beyond a reasonable doubt that a defendant (1) knew a firearm was present; and (2) exercised immediate and exclusive control over the area where the firearm was found." *People v. Sams*, 2013 IL App (1st) 121431, ¶ 10. Courts have ruled that a

"person's knowledge of the place or location of the [item] alleged to be possessed is not the equivalent of possession." (Internal quotation marks omitted.) *People v. McIntyre*, 2011 IL App (2d) 100889, ¶ 17. "Moreover, a defendant's status as owner-driver of the vehicle does not put him into possession of everything within the passenger area when there are passengers present who may, in fact, be the ones in possession of the contraband." (Internal quotation marks omitted.) *Id.*

¶ 29    The defendant's proximity to the weapon is another factor that courts have found relevant in determining whether the defendant constructively possessed a firearm. This court's decision in *People v. Condon*, 148 Ill. 2d 96 (1992), provides a helpful analogue. See *People v. Harre*, 155 Ill. 2d 392, 399 (1993) (describing the issue in *Condon* as "whether a conviction of armed violence may be based on only constructive possession arising solely from the presence of weapons in the defendant's home").

¶ 30    In *Condon*, the defendant was found guilty of armed violence. 148 Ill. 2d at 99. The armed violence statute provided: " 'A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law.' " *Id.* at 109 (quoting Ill. Rev. Stat. 1987, ch. 38, ¶ 33A-2). A person was considered armed with a dangerous weapon " 'when he carries on or about his person or is otherwise armed with a category I or category II weapon.' " *Id.* (quoting Ill. Rev. Stat. 1987, ch. 38, ¶ 33A-1(a)).

¶ 31    We observed that "[t]he intended purpose of the armed violence statute is to deter felons from using dangerous weapons so as to avoid the deadly consequences which might result if the felony victim resists." *Id.* However, under the circumstances of that case, where police found the defendant in the kitchen while the firearms were in other rooms of the house, this court determined that the deterrent purpose was not served. *Id.* at 109-10. Rather, we observed that, for the "deterrent purpose of the armed violence statute" "to be served, it would be necessary that the defendant have some type of *immediate access to* or *timely control over* the weapon." (Emphases in original.) *Id.* at 110. We found the danger that the defendant "would be forced to make an instantaneous decision to use the guns was nonexistent because he had no 'immediate access to' or 'timely control over' the guns." *Id.*

¶ 32    This court's decision in *Liss*, 406 Ill. at 421, also is instructive. There, the defendant was convicted under a statute providing that " '[n]o person shall carry concealed on or about his person a pistol, revolver or other firearm.' " *Id.* (quoting Ill. Rev. Stat. 1949, ch. 38, ¶ 155). The evidence showed that an officer stopped the vehicle that the defendant was driving for a traffic violation. The officer searched both the defendant and his companion, who occupied the front passenger seat, as well as the vehicle. The officer found a pistol "beneath the front seat of the car, at about the middle thereof, six inches back under the seat." *Id.* at 420-21.

¶ 33    The defendant testified that he had borrowed the car, had never seen the firearm, and did not own it. The passenger also testified that he did not own the gun, did not place it under the front seat, and had not seen anyone else place it there. "No testimony was offered by the People as to the ownership of the automobile, or in rebuttal of the testimony of the defendant and his companion." *Id.* at 421. This court reversed the defendant's conviction, observing that "when the statute prohibits the concealing of a weapon 'on or about the person' *** the weapon must be actually concealed on the person, or in such close proximity that it can be readily used as though on the person." *Id.* at 422.

¶ 34    Returning to this case, viewed in the light most favorable to the State, the evidence shows that, during their travels in Illinois, defendant drove the minivan, Montgomery sat in the front passenger seat, and Horne sat in the third-row passenger seat. The officer did not think that defendant owned the minivan, and the State presented no evidence that he owned the vehicle. Defendant knew that the firearm was in the minivan. However, the weapon was between 5 and 10 feet away from defendant, closest to Horne. The officer did not think that defendant could reach the firearm from the driver's seat, the officer did not see defendant touch the weapon, and the crime lab did not determine that defendant's fingerprints were on the weapon. Given these facts, we conclude that the State presented insufficient evidence to prove beyond a reasonable doubt that defendant possessed the weapon in violation of section 24-1.1(a). Compare *Sams*, 2013 IL App (1st) 121431, ¶ 13 (ruling that the evidence was insufficient to establish constructive possession where the officers' "testimony show[ed] only that defendant walked out of a house in which a gun was later found"), with *People v. Clodfelder*, 172 Ill. App. 3d 1030, 1032, 1034 (1988) (holding that where "[d]efendant admitted ownership of the vehicle and the rifle and knowledge of where the rifle had been placed in the

vehicle," sufficient evidence "support[ed] a determination he constructively possessed the gun 'about his person' ").

¶ 35     In this case, the trial court disbelieved Burrell's testimony that he had left the gun inside defendant's brother's minivan for several weeks. This determination was consistent with its responsibility to weigh the evidence as trier of fact. See *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). Yet, even if Burrell's testimony was incredible, the State still bore the burden of proving beyond a reasonable doubt that defendant knowingly possessed the firearm on or about his person. And as the above facts demonstrate, it failed to do so. *Cf. People v. Bailey*, 333 Ill. App. 3d 888, 891-92 (2002) (observing that "it is incumbent on the State to present" evidence in support of the offense charged and reversing defendant's conviction for aggravated unlawful use of a weapon where the firearm was not visible to defendant, no fingerprints were taken from the gun, and where defendant owned neither the gun nor the vehicle in which the gun was found).

¶ 36     The State contends that section 24-1.1(a), which prohibits a felon from knowingly possessing a firearm "on or about his person or on his land or in his own abode or fixed place of business" (720 ILCS 5/24-1.1(a) (West 2016)), must be interpreted in conjunction with the statute prohibiting unlawful use of weapons (*id.* § 24-1) and the statute prohibiting aggravated unlawful use of weapons (*id.* § 24-1.6). However, our focus is and must remain on the language of the provision under which defendant was convicted. And this court has already ruled that the unlawful use of a weapon and unlawful use of a weapon by a felon "provisions establish separate and distinct offenses." *People v. Gonzalez*, 151 Ill. 2d 79, 86 (1992); see also *id.* at 87 ("sections 24-1 and 24-1.1 create separate, independent offenses"). Therefore, the unlawful use of weapons and aggravated unlawful use of a weapon statutes do not sway our interpretation of section 24-1.1(a).

¶ 37     The State also argues that this court's decision in *Gonzalez* compels the conclusion that defendant's conviction must be upheld. However, in *Gonzalez*, this court affirmed the defendant's conviction and sentence for unlawful use of a weapon by a felon after officers saw him pull a revolver from his waistband and toss it to the ground. *Id.* at 80. The defendant in *Gonzalez* had the firearm "on" his person; thus, the central issue in this case—whether the State presented sufficient

evidence to prove beyond a reasonable doubt that the weapon was "about" defendant's person—simply was not implicated in *Gonzalez*.

¶ 38    Citing *People v. Rangel*, 163 Ill. App. 3d 730 (1987), and other decisions, the State observes that various appellate courts have construed section 24-1.1(a)'s "on or about his person" language to include constructive possession of a weapon in a vehicle. We agree. Indeed, we noted earlier that the statutory reference to "about" his person means constructive possession. See *supra* ¶ 24. For instance, in *Rangel*, the undisputed evidence showed that the defendant owned the vehicle from which the weapon was removed, and the weapon was in plain view on the floor of the car where the defendant had been sitting just before officers apprehended him. 163 Ill. App. 3d at 739-40. The court in *Rangel* observed that the "[d]efendant's ownership of the car, his presence therein, and partial visibility of the weapon from the outside" supported the trial court's determination that he knowingly possessed a weapon in violation of section 24-1.1. *Id.* at 740. That said, whether in a vehicle or otherwise, the State is required to present sufficient evidence to prove beyond a reasonable doubt that a defendant was in constructive possession of a firearm. Such evidence was lacking here. See, *e.g.*, *McIntyre*, 2011 IL App (2d) 100889, ¶ 16 (ruling that the State did not prove defendant guilty beyond a reasonable doubt of having violated section 24-1.1(a) under a theory of constructive possession when "regardless of defendant's knowledge of the weapon *** , the State failed to prove that defendant had immediate and exclusive control over it").

¶ 39    Our holding that defendant was not proven guilty beyond a reasonable doubt of unlawful possession of a weapon in violation of section 24-1.1(a) does not mean that it is lawful for a felon to constructively possess a firearm. Nor could we arrive at such a conclusion when the text of this statute expressly prohibits a felon from knowingly possessing a firearm "about his person." Rather, our holding aligns with settled law, which provides that the State must prove the essential elements of the crime beyond a reasonable doubt. *Ortiz*, 196 Ill. 2d at 259. Where the State failed to prove beyond a reasonable doubt that defendant exercised immediate and exclusive control over the area where the firearm was found, his conviction for unlawful possession of a weapon in violation of section 24-1.1(a) on a theory of constructive possession cannot stand.

¶ 40                                    CONCLUSION

¶ 41      Accordingly, we affirm the appellate court's judgment vacating defendant's conviction for unlawful possession of a weapon by a felon.

¶ 42      Appellate court judgment affirmed.

¶ 43      Circuit court judgment reversed.

¶ 44      JUSTICE MICHAEL J. BURKE, dissenting:

¶ 45      The issue before this court is whether the phrase "on or about his person" in section 24-1.1(a) of the Criminal Code of 2012 (720 ILCS 5/24-1.1(a) (West 2014)) includes constructive possession of a firearm in a vehicle. The appellate court vacated defendant's conviction for unlawful possession of a weapon by a felon, holding that the phrase "on or about his person" in section 24-1.1(a) means the firearm is on the person or " 'in such close proximity that it can be readily used as though on the person.' " 2019 IL App (3d) 170252, ¶ 21 (quoting *People v. Liss*, 406 Ill. 419, 422 (1950)). In reaching that decision, the appellate court noted that this court had not construed the meaning of the phrase "on or about his person" in section 24-1.1(a) but that several districts of the appellate court had done so. *Id.* ¶¶ 15-18 (discussing *People v. Rangel*, 163 Ill. App. 3d 730 (1st Dist. 1987), *People v. Clodfelder*, 172 Ill. App. 3d 1030 (4th Dist. 1988), *People v. Woodworth*, 187 Ill. App. 3d 44 (5th Dist. 1989), and *People v. Jastrzemski*, 196 Ill. App. 3d 1037 (1st Dist. 1990)). The appellate court acknowledged that those cases held that "on or about his person" included constructive possession of a firearm in a vehicle, as well as actual possession. *Id.* The appellate court, however, declined to follow those cases, concluding that the legislature did not intend for section 24-1.1(a) to encompass an entire vehicle. *Id.* ¶ 20. The appellate court thus limited its analysis to whether the firearm was "on or about" defendant's person, rather than whether the firearm was located in the vehicle. *Id.* Given its construction of the statute, the appellate court held that the evidence did not show that the gun was on or about defendant's person as required by section 24-1.1(a), so that the State failed to prove defendant guilty beyond a reasonable doubt. *Id.* ¶ 24.

¶ 46    Although the majority affirms the appellate court, it does so on a different basis. The majority does not expressly state that it disagrees with the appellate court's construction of section 24-1.1(a), but the majority reaches a result contrary to the appellate court when it holds that section 24-1.1(a) prohibits a felon from constructive possession of a firearm in a vehicle. *Supra* ¶ 24. In reaching that result, the majority affirmatively states that it agrees with the appellate court decisions that the instant appellate court declined to follow. *Supra* ¶ 38. The majority nonetheless affirms the appellate court judgment vacating defendant's conviction on the basis that the State failed to prove beyond a reasonable doubt that defendant had constructive possession of the firearm in this case.

¶ 47    I agree with the majority that, under section 24-1.1(a), a felon is prohibited from having both actual and constructive possession of a firearm in a vehicle. I disagree, however, with the majority's application of constructive possession to the facts of this case and disagree that the State failed to prove beyond a reasonable doubt that defendant had constructive possession of the firearm in violation of section 24-1.1(a). For those reasons, I dissent from the majority opinion.

¶ 48    The majority correctly states that two elements are necessary to establish constructive possession: (1) that a defendant knew a firearm was present and (2) that the defendant exercised immediate and exclusive control over the area where the firearm was found. *Supra* ¶¶ 24-25. As this court has held, in the context of constructive possession of a controlled substance, "[c]onstructive possession exists without actual personal present dominion over a controlled substance, but with an intent and capability to maintain control and dominion." *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992). Whether there is knowledge and whether there is possession or control are questions of fact to be determined by the trier of fact. *People v. Schmalz*, 194 Ill. 2d 75, 81 (2000).

¶ 49    As noted, the appellate court declined to follow the decisions in *Rangel*, *Clodfelder*, and *Jastrzemski*. The majority agrees that those courts correctly construed "on or about his person" in section 24-1.1(a) to include constructive possession of a weapon in a vehicle, but it apparently finds the facts of this case distinguishable, given its holding that the State did not prove beyond a reasonable doubt that defendant was in constructive possession of a firearm. I disagree that the facts of this case are distinguishable from the preceding cases.

¶ 50        In *Rangel*, the court held that the recovery of a gun from the defendant's car, which he had recently exited, rather than from his person, did not exclude him from the provisions of section 24-1.1(a). 163 Ill. App. 3d at 739. In *Rangel*, the decisive question was "whether the evidence supports defendant's knowing possession of the weapon to the requisite standard." *Id.* To determine the element of knowledge in that case, the court looked to circumstantial evidence. *Id.* The court found the defendant's ownership of the car, his presence therein, and the partial visibility of the weapon from outside the car were sufficient factors to establish defendant's knowledge. *Id.* at 740. Therefore, the trial court could reasonably conclude from the evidence presented that the defendant, a convicted felon, knowingly possessed a prohibited weapon. *Id.*

¶ 51        In this case, there was no need to look to circumstantial evidence to show defendant's knowing possession of the gun, because Trooper Shamblin testified that defendant told Shamblin that he knew the gun was in the van. Although defendant testified that he did not know the gun was in the van and denied telling Shamblin that he knew the gun was in the van, the trial court found Shamblin's testimony to be credible. It is for the trier of fact to weigh the credibility of the witnesses and to resolve conflicts or inconsistencies in their testimony. *Frieberg*, 147 Ill. 2d at 360. Viewed in a light most favorable to the State, the trial court's finding that defendant knew a firearm was present, one of the elements of constructive possession, was not so improbable or unsatisfactory that there remains a reasonable doubt of defendant's guilt.

¶ 52        With regard to the second element of constructive possession—that defendant exercised immediate and exclusive control over the area where the firearm was found—I agree with the analysis in *Clodfelder* and *Jastrzemski*. In *Clodfelder*, the defendant's vehicle was stopped because it had no number plates. 172 Ill. App. 3d at 1032. A search of the vehicle produced a .22-caliber rifle. The rifle was directly behind the backseat on the driver's side of the vehicle. *Id.* One of the deputies called to the scene testified that, in order for defendant to reach the rifle from the driver's seat, he would have had to rise from his seat and turn. *Id.* The defendant admitted ownership of the vehicle and the rifle and knowledge of where the rifle had been placed in the vehicle. *Id.* The defendant argued that he could not have possessed the rifle "on or about his person" because the rifle was too attenuated from him as he sat in the driver's seat. *Id.*

¶ 53    The *Clodfelder* court found that the rifle was "on or about" the defendant's person even if he could not reach the rifle without changing position. *Id.* at 1033. The court held the evidence was sufficient to show that the defendant constructively possessed the gun "about his person," noting that he was the owner with exclusive possession of the vehicle, he was the owner of the gun, and he knew where the gun was placed. *Id.* at 1034.

¶ 54    In *Jastrzemski*, the court held that a weapon was "on or about" the defendant's person for purposes of section 24-1.1(a) where the weapon was found underneath the hood of a car driven by the defendant. 196 Ill. App. 3d at 1039. The court observed that there also was evidence in the case that defendant owned the car and knew where the gun was hidden. *Id.* In finding the case similar to *Clodfelder*, the *Jastrzemski* court explained:

> "Although defendant would have had to stop the car and open the hood to get the gun, plainly the defendant in *People v. Clodfelder* would also have had to stop driving and either exit the car or climb over the seat to retrieve his rifle. Moreover, as in *People v. Clodfelder*, there was evidence that defendant owned the car and knew where the gun was hidden. Finally, the result we reach in this case is plainly consistent with the legislature's intent in enacting section 24-1.1, namely, to protect public safety by prohibiting possession of weapons by felons." *Id.* at 1040.

¶ 55    In this case, defendant knew the gun was in the van. In fact, he was the only occupant of the van to tell Trooper Shamblin that he knew the gun was in the van. Although defendant did not own the van, he had borrowed it from his brother to drive from Cedar Rapids, Iowa, to Louisville, Kentucky, and had been gone for more than a couple of days. The men were on their way back to Cedar Rapids when the van was stopped. Defendant had been driving for all but the first 10 to 20 minutes of that trip. During the 10 to 20 minutes when defendant was not driving, defendant sat in the back seat near the gun. Consequently, although defendant did not own the van, it was clear that he had authority to use it. The fact that there were two other passengers in the van does not defeat a finding of immediate and exclusive control, as the "rule that possession must be exclusive does not mean that the possession may not be joint." *Schmalz*, 194 Ill. 2d at 82. As in *Clodfelder* and *Jastrzemski*, the evidence was sufficient to find that the firearm was "on or about"

- 16 -

defendant's person. Taking the facts of this case in the light most favorable to the State, I believe a rational trier of fact could have found that defendant had both knowledge that the firearm was in the van and exercised immediate and exclusive control over the area where the firearm was found.

¶ 56        The majority, however, concludes that the State failed to prove beyond a reasonable doubt that defendant knowingly possessed the firearm on or about his person. Ostensibly viewing the facts in the light most favorable to the State, the majority recites the following facts as insufficient to prove defendant's guilt beyond a reasonable doubt: the firearm was 5 to 10 feet away from defendant and was closest to Horne, the officer did not think defendant could reach the firearm from the driver's seat, the officer did not see defendant touch the weapon, and the crime lab did not determine that defendant's fingerprints were on the weapon. *Supra* ¶ 34. The majority's reliance on these facts is misplaced. Although those facts would be relevant in determining actual possession, they are less significant to a finding of constructive possession.

¶ 57        The majority cites several appellate court decisions presumably in support of its holding. The majority does not discuss those decisions in detail, aside from citing them for a rule of law or summarizing the court's holding in a parenthetical. None of those cases, however, supports a finding that the State did not prove constructive possession in this case.

¶ 58        For example, quoting *People v. McIntyre*, 2011 IL App (2d) 100889, ¶ 17, the majority states that, "[c]ourts have ruled that a 'person's knowledge of the place or location of the [item] alleged to be possessed is not the equivalent of possession.' " *Supra* ¶ 28. This is correct because the State must prove both knowledge of the presence of the weapon *and* that the defendant had immediate and exclusive control over the area where the weapon was found. Here, the State proved both defendant's knowledge of the weapon and defendant's immediate and exclusive control over the area where the weapon was found.

¶ 59        In concluding that the State failed to present sufficient evidence to prove beyond a reasonable doubt that defendant possessed the weapon in violation of section 24-1.1(a), the majority compares *People v. Sams*, 2013 IL App (1st) 121431, ¶ 13, with *Clodfelder*, 172 Ill. App. 3d at 1032, 1034, parenthetically summarizing *Sams* as "ruling that the evidence was insufficient to establish

constructive possession where the officers' 'testimony show[ed] only that defendant walked out of a house in which a gun was later found.' " *Supra* ¶ 34 (quoting *Sams*, 2013 IL App (1st) 124131, ¶ 13). Presumably the majority finds the facts of this case to be more analogous to *Sams* than to *Clodfelder*.

¶ 60    I do not find *Sams* to be analogous to this case in any way. At issue in *Sams* was constructive possession of a gun in a home that the defendant was merely visiting. The *Sams* defendant was never seen in the same room as the gun, and the gun was not easily visible. The State in *Sams* could not prove knowledge or that the defendant exercised immediate and exclusive control over the area where the gun was found. Here, the State proved both factors. Contrary to the majority's suggestion, then, *Sams* does not support a finding that the State failed to prove defendant guilty beyond a reasonable doubt in this case.

¶ 61    The majority also cites *People v. Bailey*, 333 Ill. App. 3d 888, 891-92 (2002), noting in a parenthetical that the *Bailey* defendant's conviction for aggravated unlawful use of a weapon was reversed where the firearm was not visible to defendant, no fingerprints were taken from the gun, and the defendant neither owned the gun nor the vehicle in which the gun was found. *Supra* ¶ 35. *Bailey* does not support a finding that the State failed to prove defendant guilty beyond a reasonable doubt. First, the *Bailey* defendant was charged with aggravated unlawful use of a weapon, not unlawful use of a weapon by a felon. As discussed below, the majority declines to interpret section 24-1.1(a) in conjunction with either the unlawful use of a weapon statute (720 ILCS 5/24-1 (West 2016)) or the aggravated unlawful use of a weapon statute (*id.* § 24-1.6), as those provisions establish separate and distinct offenses. *Supra* ¶ 36. Second, the court in *Bailey* found "no evidence from which Bailey's knowledge of the presence of the gun can be inferred." 333 Ill. App. 3d at 892. Here, there was no need to infer defendant's knowledge of the presence of the gun because he admitted he knew the gun was in the car.

¶ 62    The majority further confuses the matter in its analysis of constructive possession. The majority first correctly states that, to establish constructive possession, the State must prove beyond a reasonable doubt that the defendant (1) knew the firearm was present and (2) exercised immediate and exclusive control over the area where the firearm was found. *Supra* ¶¶ 24-25. The majority notes that

- 18 -

a defendant's proximity to the weapon is another factor that courts have found relevant in determining whether a defendant constructively possessed a firearm. *Supra* ¶ 29. In support of its discussion of proximity, the majority cites *People v. Condon*, 148 Ill. 2d 96 (1992), and *Liss*, 406 Ill. 419, as "helpful" and "instructive." I find those decisions to be neither helpful nor instructive, as those courts did not address section 24-1.1(a) or the issue of constructive possession under that statute. At best, *Condon* and *Liss* are inapposite. At worst, the majority's citation of those decisions in the context of proximity might suggest to the lower courts that proximity is a necessary element of constructive possession, rather than one factor in the overall constructive possession analysis. For purposes of constructive possession under section 24-1.1(a), immediate and exclusive control does not translate into being immediately or readily accessible.

¶ 63     At issue in *Condon* was the armed violence statute. That statute defined the phrase " 'armed with a dangerous weapon' " as when a person " 'carries on or about his person or is otherwise armed with a category I or category II weapon.' " *Condon*, 148 Ill. 2d at 109 (quoting Ill. Rev. Stat. 1987, ch. 38, ¶ 33A-1(a)). The *Condon* court found that the purpose of the statute was to deter felons from using dangerous weapons, in order to avoid the deadly consequences that might result if the felony victim resists. *Id.* A felon with a weapon at his disposal is forced to make a spontaneous and often instantaneous decision to kill that he would not face if he did not have a weapon on hand. *Id.* at 109-10. The *Condon* court held that, in order to serve the deterrent purpose, "it would be necessary that the defendant have some type of *immediate access to* or *timely control over* the weapon." (Emphases in original.) *Id.* at 110.

¶ 64     I first note that, because armed violence is a separate and distinct offense from unlawful use of a weapon by a felon, this court should look only to the language of section 24-1.1(a) in interpreting the statute. Indeed, the majority states exactly that in rejecting the State's request that this court interpret section 24-1.1 in conjunction with section 24-1 (unlawful use of weapons) and section 24-1.6 (aggravated unlawful use of a weapon). *Supra* ¶ 36. As the majority observes, "our focus is and must remain on the language of the provision under which defendant was convicted." *Supra* ¶ 36. That the armed violence statute is separate and distinct is further emphasized when comparing the deterrent purpose of that statute and that of section 24-1.1. The deterrent purpose of armed violence is served only where a

defendant has some type of immediate access to or timely control over the weapon. In contrast, the legislature determined in enacting section 24-1.1 that "it should be a crime for a felon to possess *any* firearm, in *any* situation." (Emphases in original.) *People v. Gonzalez*, 151 Ill. 2d 79, 87 (1992). Consequently, the deterrent purpose of section 24-1.1 is served whether a defendant has actual or constructive possession of a firearm. For that reason, I disagree with the majority that *Condon* provides a "helpful analogue" or is in any way germane to the analysis in this case.

¶ 65 Similarly, I disagree with the majority that *Liss* is "instructive" in this case. The defendant in *Liss* was charged under a statute providing, " 'No person shall carry concealed on or about his person a pistol, revolver or other firearm.' " 406 Ill. at 421 (quoting Ill. Rev. Stat. 1949, ch. 38, ¶ 155). Like the armed violence statute at issue in *Condon*, this 72-year-old statute defines an entirely different offense than section 24-1.1. Section 24-1.1 prohibits a person from knowingly possessing on or about his person, as opposed to carrying concealed on or about his person. While both statutes use the term "on or about his person," I believe there is a distinction between *carrying* and knowingly *possessing*. In addition, the statute at issue in *Liss* was amended not long afterward to include possession of a weapon concealed in a vehicle. See *People v. McKnight*, 39 Ill. 2d 577, 580 (1968). For those reasons, the *Liss* decision has no application in this case.

¶ 66 With regard to the majority's constructive possession analysis, then, I agree with the majority that "on or about his person" in section 24-1.1(a) includes constructive possession of a weapon in a vehicle. I also agree that constructive possession requires the State to prove beyond a reasonable doubt that a defendant (1) knew a firearm was present and (2) exercised immediate and exclusive control over the area where the firearm was found. I disagree with the majority's analysis, however, to the extent the opinion might suggest that proximity to the weapon is an element of the offense, rather than one factor to consider in determining constructive possession.

¶ 67 I also disagree with the majority that the State did not prove defendant guilty beyond a reasonable doubt. Again, the question for this court is whether, viewing the evidence *in the light most favorable to the State, any* rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 214 Ill. 2d 206, 217 (2005). In making this inquiry, it is not our function to

retry the defendant, nor will we substitute our judgment for that of the trier of fact. *Id.* The evidence showed that defendant had the authority to use his brother's van and had been in possession of the van for more than a couple of days; defendant admitted that he knew the firearm was in the van; defendant knew extensive details about the gun, including when and where Burrell had purchased the gun; the gun was in a glove in "kind of a tray next to a cupholder," on the back driver's side, between the middle and rear seat of the van; and, during the first 10 to 20 minutes of the drive home, defendant sat in the back rear seat near the gun. It is not fatal to the State's case that the firearm was 5 to 10 feet away from defendant when Trooper Shamblin pulled the van over, because constructive possession exists without "actual personal present dominion ***, but with an intent and capability to maintain control and dominion." *Frieberg*, 147 Ill. 2d at 361. Clearly, if we view the evidence in the light most favorable to the State, we must find that a rational trier of fact could find that defendant knew the firearm was present in the van and that defendant exercised immediate and exclusive control over the area where the firearm was found. The majority fails to apply the standard of review and simply reweighs the evidence and substitutes its judgment for that of the trier of fact. I would reverse the appellate court's opinion vacating defendant's conviction and would remand the case to the trial court with directions to reinstate defendant's conviction.

¶ 68    JUSTICE GARMAN joins in this dissent.

¶ 69    JUSTICE CARTER took no part in the consideration or decision of this case.