2021 IL App (1st) 191378

FIRST DISTRICT
SIXTH DIVISION
May 14, 2021

No. 1-19-1378

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 14343 |
| | ) | |
| JERICHOE HINES, | ) | Honorable |
| | ) | Thomas Joseph Hennelly, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment and opinion.

**OPINION**

¶ 1　Following a 2019 bench trial, defendant Jerichoe Hines was convicted of unlawful use of a weapon by a felon (UUWF) and sentenced to four years' imprisonment. On appeal, he contends that the evidence was insufficient to convict him as the State failed to prove beyond a reasonable doubt his possession of firearms in his abode as charged. For the following reasons, we find that the location where a convicted felon possessed a weapon is not an essential element of the UUWF offense and the evidence showed that defendant knew about and had constructive possession of the weapons found behind a dresser.

¶ 2　　　　　　　　　　　　I. JURISDICTION

¶ 3　On February 28, 2019, the trial court found defendant guilty of two counts of UUWF. The court sentenced him on a single count of UUWF to four years' imprisonment on June 19, 2019, and he filed his notice of appeal that same day. Accordingly, this court has jurisdiction pursuant

to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. July 1, 2017) governing appeals from a final judgment of conviction in a criminal case.

¶ 4                                      II. BACKGROUND

¶ 5      Defendant was charged with four counts of UUWF for knowingly possessing "in his own abode" on or about September 1, 2016, after having been convicted of the felony: a .32-caliber handgun (count I), live ammunition in that handgun (count II), a 9-millimeter handgun (count III), and live ammunition in that handgun (count IV). Defendant was also charged with possession of cannabis with intent to deliver and possession of a controlled substance, specifically cocaine. Other charges in the indictment were nol prossed before trial.

¶ 6      A search warrant was issued on September 1, 2016, to search defendant, by name and description, and to search the second-floor unit of a two-flat residential building at 4700 West Van Buren Street in Chicago, Illinois (Premises). The police executed the warrant that day and found four people present in the apartment: a 6-year-old, a 14-year-old, an "older female," and defendant, who was in the north bedroom laying on the bed.

¶ 7      At defendant's bench trial, Officer Mark Gutkowski testified that he immediately detained defendant. The officer had prior knowledge that defendant was on electronic home monitoring (EHM) with the sheriff's office, and he confirmed that defendant was wearing an EHM band on his ankle. He moved defendant to the living room and read him his *Miranda* rights. See *Miranda v. Arizona*, 384 U.S. 436 (1966). Officer Gutkowski then asked defendant "if there was any illegal contraband in the residence." Defendant told him that "a young man dropped off two guns earlier this morning and that he placed them underneath the dresser in the north bedroom, and that there

was some weed on the TV stand." The court asked the officer to repeat what defendant told him, and he answered that "a younger male dropped off two guns in the morning for him to hold, and that he placed them underneath the dresser in the north bedroom."

¶ 8    On recross-examination, when shown his supplemental report, Officer Gutkowski acknowledged that he did not write "to hold" when referring to defendant's statement that someone dropped off the guns. He also acknowledged that he did not know whether the EHM ankle bracelet was functioning when defendant was arrested.

¶ 9    Officer Fazy testified that he took part in the execution of the search warrant on September 1, 2016, at the Premises. He was the evidence officer and Officer Donnelly directed him to a north bedroom where he saw defendant laying on the bed. Officer Fazy was told to look behind a dresser where he saw a blue pillowcase. Inside, he found "[t]wo blue steel semiautomatic handguns" that he inventoried. He also observed a black bag on the floor that contained "bags of suspect cannabis, narcotics packaging, equipment, baggies, a scale, and some other items." Items recovered at the Premises and inventoried included (1) a Ruger 9-millimeter blue steel pistol containing seven bullets, (2) a Beretta .32-caliber blue steel pistol also containing seven bullets, (3) 20 clear plastic bags of a green leafy substance suspected to be cannabis and (4) one plastic bag containing a white rock-like substance suspected to be "crack" cocaine.

¶ 10    After defendant was transported to the Homan Square police station, Detective Michael Lynch read him his *Miranda* rights and he gave a statement. Defendant stated "that his friend Little Harry dropped off the weapons earlier in the day, [and] asked him to hold onto them." Defendant "took the weapons, put them in a blue pillowcase and put them under the dresser."

¶ 11     Sergeant Neil Gaynor of the Cook County Sheriff's Electronic Home Monitoring Unit testified that when a person is released on EHM, they are given "the band" and a black case marked "3M," which contains the "home base that goes into the participant's home that monitors him." Sergeant Gaynor was shown People's Exhibits 1 and 2, which were forms defendant filled out when he was placed on EHM. He testified that such forms were kept in the ordinary course of business, but these particular forms in the exhibits had been given to him for the purpose of testifying. He did not "have knowledge as to whether or not these particular records were maintained in the regular course of business." The defense objected to Exhibits 1 and 2 based on lack of foundation for the business records exception to the hearsay rule. The trial court sustained the objection.

¶ 12     The parties stipulated that forensic scientist Kimberly Blood would testify that the recovered substances tested positive for 0.1 gram of cocaine and 11.1 grams of cannabis. The State also introduced into evidence a certified copy of defendant's previous felony conviction under case number 10-CR-21632 for manufacture, delivery, or possession with intent to deliver a controlled substance, for which he received a prison term of 4½ years.

¶ 13     The State rested its case, and the trial court denied defendant's motion for a directed finding as to the UUWF charges but granted the motion as to the cannabis and controlled substance charges. Defendant did not testify nor did the defense present any evidence.

¶ 14     In closing, defense counsel argued that in order for defendant to be convicted of UUWF, the State must prove that the apartment where defendant was found and where the weapons were recovered was his "abode." Furthermore, the State failed to prove defendant had actual or constructive possession of the weapons and ammunition. In rebuttal, the State argued that

defendant's statements and the evidence collected at the scene were "consistent" and it was clear from the circumstantial evidence that defendant lived in the apartment.

¶ 15 The trial court found defendant guilty of two counts of UUWF pertaining to the handguns recovered. The court found credible defendant's statement to Officer Lynch that

> "the weapons were given to the defendant to hold onto by Little Harry, and that he put them in a secure place. I think that implies that [defendant] has control of the premises when someone drops something off for someone to hold and secure. It certainly implies that he has control over the premises.
>
> In addition, Officer Gutkowski testified that he observed an electronic monitoring band on the defendant when he made the arrest."

The court found defendant not guilty on the two UUWF counts pertaining to the ammunition.

¶ 16 The court denied defendant's motion for a new trial. Prior to sentencing, defendant raised a *pro se* claim of ineffective assistance of counsel, and the trial court conducted a preliminary *Krankel* inquiry. See *People v. Krankel*, 102 Ill. 2d 181 (1984). Defendant contended that his trial counsel should have challenged the probable cause to obtain the search warrant. Defendant also asserted that the apartment was not his home and he was not the only male who came into the apartment. He acknowledged that the apartment was where he was doing his EHM but maintained that he stayed in a different bedroom which was "where [his] electronic monitoring box was." He also claimed that he never made a statement to the police.

¶ 17 After the hearing, the court found that defendant's trial counsel "did a zealous and outstanding job in defending you." Defendant was convicted of only two of eight counts. The court

also reiterated that it found the officers' testimony credible, as well as defendant's statement to Officer Lynch.

¶ 18    Following a sentencing hearing, the court sentenced defendant to four years' imprisonment for a single count of UUWF, count I, with the other surviving count merged. This appeal followed.

¶ 19                                III. ANALYSIS

¶ 20    Defendant first contends that under section 24-1.1(a) of the Criminal Code of 2012 (Criminal Code), the State was required to prove that he knowingly possessed a firearm "in his own abode." 720 ILCS 5/24-1.1(a) (West 2016). Defendant correctly asserts that this is a question of statutory interpretation. The primary rule of statutory interpretation is to ascertain and effectuate legislative intent. *Wisnasky-Bettorf v. Pierce*, 2012 IL 111253, ¶ 16. The best indicator of that intent is the statute's language, given its plain and ordinary meaning. *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 235 (2007). Furthermore, courts construe statutes as a whole, reading each provision in connection with every other section. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397 (1994). If the statutory language is unambiguous, we must enforce the statute as written. *Gateway Concrete Forming Systems, Inc. v. Dynaprop XVIII: State Street LLC*, 356 Ill. App. 3d 806, 810 (2005).

¶ 21    Section 24-1.1(a) provides:

> "(a) It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2016).

Defendant argues that under the plain terms of section 24-1.1(a), an essential element of the UUWF offense is that the felon possessed the firearm "about his person or on his land or in his own abode or fixed place of business." *Id.* He contends that the State produced no evidence that he was in possession of a firearm "in his own abode."

¶ 22　In *People v. Gonzalez*, 151 Ill. 2d 79, 86-87 (1992), the defendant argued that the trial court improperly imposed an extended-term sentence where the UUWF offense on which his conviction was based was an enhancement of the unlawful use of a weapon offense (UUW). Our supreme court disagreed that the UUWF offense was merely an upgrade of the UUW offense; rather, "the two provisions establish separate and distinct offenses." *Id.* at 86. The court proceeded to examine section 24-1.1 and determined that "[t]he elements of [the UUWF] offense are: (1) the knowing possession or use of a firearm and (2) a prior felony conviction." *Id.* at 87. The court further found that "[t]here is no requirement in section 24-1.1 that the offender be using or possessing any particular type of firearm or that he be doing so in any particular place or manner." *Id.*

¶ 23　The court then compared section 24-1 that created the offense of UUW. It found that the elements of UUW are "(1) the knowing possession or use of a *certain* weapon or firearm; (2) in a *certain* place and/or manner; and (3) by a person who does not occupy one of the positions exempted by section 24-2 of the Criminal Code." (Emphases in original.) *Id.* It determined that "[u]nlike section 24-1.1, the type of firearm or weapon and the place and manner of the possession or use *are* relevant considerations under section 24-1." (Emphasis in original.) *Id.* The court therefore concluded that section 24-1.1 and section 24-1 are separate and distinct offenses, and "[t]he fact that the offender must be a convicted felon is merely an element of the crime, *** [and] not an 'enhancement' provision," in section 24-1.1. *Id.* at 88.

¶ 24    Appellate courts have cited *Gonzalez* as authority in finding that the offense of UUWF prohibits the possession of firearms by felons, regardless of the location where the possession occurred. See *People v. Walker*, 2020 IL App (1st) 162305, ¶ 19; *People v. Hester*, 271 Ill. App. 3d 954, 956 (1995); see also *People v. Lindsey*, 324 Ill. App. 3d 193, 201 (2001). Defendant implies that these decisions should not have followed *Gonzalez* because the discussion of section 24-1.1's elements therein was *dictum*. We disagree that the *Gonzalez* court's analysis of section 24-1.1 was *dictum* where the court interpreted the provision in order to resolve a substantive question raised by the defendant. In determining that UUWF was not merely an "upgrade" of the UUW offense, the court found it significant that location was not an element of UUWF under section 24-1.1. *Gonzalez*, 151 Ill. 2d at 87-88.

¶ 25    Nonetheless, this court is not free to ignore our supreme court's *dicta*. " 'Even *obiter dictum* of a court of last resort can be tantamount to a decision and therefore binding in the absence of a contrary decision of that court.' " *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 282 (2009) (quoting *Cates v. Cates*, 156 Ill. 2d 76, 80 (1993)). Therefore, we too follow *Gonzalez* and find that "[t]he elements of [the UUWF] offense are: (1) the knowing possession or use of a firearm and (2) a prior felony conviction," with no requirement that the offender possessed a firearm "in any particular place or manner." *Gonzalez*, 151 Ill. 2d at 87.

¶ 26    In a further effort to bypass *Gonzalez*, defendant argues that our supreme court "could not have meant that the location of where the weapon is found is not an element of" UUWF because that would contradict well-established rules of statutory construction. Defendant contends that if location is not an element of the UUWF offense, "the statutory language 'on his land or in his own abode or fixed place of business' " would have "no meaning whatsoever."

¶ 27    Again, we must disagree. Words and phrases in a statute should not be construed in isolation but instead must be read in light of other relevant provisions. *People v. Bradford*, 2016 IL 118674, ¶ 15. Significantly, other sections of the statute contain similar wording. Section 24-1.6(a)(1) of the Criminal Code, which sets forth the elements of aggravated unlawful use of a weapon, provides that

> "(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:
>
>> (1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person *except* when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm[.]" (Emphasis added.) 720 ILCS 5/24-1.6(a)(1) (West 2016).

Similarly, section 24-1(a)(4) provides that a person commits the offense of unlawful use of a weapon when he knowingly

> "(4) Carries or possesses in any vehicle or concealed on or about his person *except* when on his land or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm[.]" (Emphasis added.) *Id.* § 24-1(a)(4).[1]

¶ 28    In contrast, section 24-1.1 states that it is unlawful for a felon to knowingly possess a firearm "on or about his person or on his land or in his own abode or fixed place of business,"

_____

[1]We note that both sections 24-1(a)(4) and 24-1.6(a)(1) have been held unconstitutional. See *People v. Burns*, 2015 IL 117387, ¶ 25; *People v. Brown*, 2020 IL App (1st) 180826, ¶ 17. That finding, however, does not affect our analysis here.

without the preceding word "except." Given the language in sections 24-1(a)(4), and 24-1.6(a)(1), we construe that phrase as indicative of the legislature's intent that there be no exception for possession "on his land or in his own abode or fixed place of business" for convicted felons. In other words, there is no exception in 24-1.1 for possession of a firearm "on his land or in his own abode or fixed place of business," as was the case under sections 24-1(a)(4), and 24-1.6(a)(1). See *People v. McCurine*, 2019 IL App (1st) 160817, ¶ 43 (noting that under section 24-1.1(a) "it is unlawful for a person to possess a firearm even 'in his own abode' if he has been convicted of a felony" (quoting 720 ILCS 5/24-1.1(a) (West 2014))), *appeal denied*, No. 124745 (Ill. Sept. 25, 2019). As such, the language at issue in section 24-1.1 is not meaningless. This interpretation is also "consistent with the legislature's intent in enacting section 24-1.1, namely, to protect public safety by prohibiting possession of weapons by felons." *People v. Jastrzemski*, 196 Ill. App. 3d 1037, 1040 (1990).

¶ 29    Furthermore, if location is an essential element of UUWF under section 24-1.1, the only places where a convicted felon cannot possess a firearm are "on his land or in his own abode or fixed place of business." As the State points out, under defendant's interpretation a convicted felon could legally secure his gun in a public location that he frequents, or at the home of unsuspecting friends or relatives. This result would not further the legislative intent underlying section 24-1.1.

> "[W]here a plain or literal reading of a statute produces absurd results, the literal reading should yield: 'It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. *** If a literal construction of the words of a statute be absurd, the act must be so construed

as to avoid the absurdity.' " *People v. Hanna*, 207 Ill. 2d 486, 498 (2003) (quoting *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459-60 (1892)).

¶ 30    We follow *Gonzalez*, *Walker*, *Hester*, and *Lindsey* in finding that the location where a felon possesses a firearm is not an essential element of the UUWF offense. We recognize that defendant was charged with knowingly possessing "in his own abode" two handguns, after having been convicted of the felony. However, since he was charged with all of the essential elements of the UUWF offense, the addition of "in his own abode" did not prejudice him. See *People v. Collins*, 214 Ill. 2d 206, 219 (2005) (if the charges adequately apprise the defendant of the nature of his offense, inclusion of an unnecessary factor is not prejudicial).

¶ 31    Defendant also contends that the evidence was insufficient to convict him of UUWF where the State failed to prove beyond a reasonable doubt that he knowingly possessed the firearms found behind the dresser. When the sufficiency of trial evidence is at issue, we must determine whether, taking the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *People v. Eubanks*, 2019 IL 123525, ¶ 95. It is the responsibility of the trier of fact to weigh, resolve conflicts in, and draw reasonable inferences from the testimony and other evidence. *People v. Harris*, 2018 IL 121932, ¶ 26. Thus, we do not retry a defendant. *Eubanks*, 2019 IL 123525, ¶ 95. A conviction will be reversed only if the evidence is so unreasonable, improbable, or unsatisfactory that a reasonable doubt of the defendant's guilt remains. *Harris*, 2018 IL 121932, ¶ 26.

¶ 32    When a defendant is not found in actual possession of a firearm, the State must prove constructive possession. *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). To establish constructive possession, the State must show that defendant (1) had knowledge of the presence of

the firearm and (2) exercised immediate and exclusive control over the area where the firearm was found. *Id.* Knowledge may be shown by evidence of a defendant's acts, declarations, or conduct from which one can infer that he knew the contraband existed in the place where it was found. *People v. Beverly*, 278 Ill. App. 3d 794, 798 (1996). Control is established when defendant has the "intent and capability to maintain control and dominion" over an item, even if he lacks personal present dominion over it. *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992). Defendant's control over the location where weapons are found gives rise to an inference that he possessed the weapons. *McCarter*, 339 Ill. App. 3d at 879.

¶ 33 Here, defendant told Officer Lynch "that his friend Little Harry dropped off the weapons earlier in the day, [and] asked him to hold onto them." Defendant "took the weapons, put them in a blue pillowcase and put them under the dresser." Officer Fazy recovered two semiautomatic handguns from behind a dresser in the bedroom where defendant was found lying on the bed. This evidence shows that defendant had knowledge that the weapons were located on the premises.

¶ 34 Defendant argues, however, that the State failed to prove that he exercised immediate and exclusive control over the firearms where it presented no evidence that he was living in the apartment where they were found. There is no requirement that the guns be found in defendant's residence as proof of his exclusive and immediate control over them. There may have been no evidence that the apartment was defendant's residence, but he was there when police executed the warrant, and he did not deny that he was staying in the apartment at the time. Also, defendant was in the EHM program and wore an ankle band. The cases defendant cites for support, *People v. Blue*, 343 Ill. App. 3d 927 (2003), *People v. Macias*, 299 Ill. App. 3d 480 (1998), and *People v. Jones*, 105 Ill. App. 3d 1143 (1982), are distinguishable. In those cases, the State presented no

evidence that the defendant knew the contraband was on the premises. Therefore, proof of his residency or habitation would tend to show that he had such control of the premises so as to raise an inference of his knowledge and possession of the contraband found therein. *Jones*, 105 Ill. App. 3d at 1148; *Blue*, 343 Ill. App. 3d at 939-40; *Macias*, 299 Ill. App. 3d at 485-87. Here, the evidence firmly established that defendant knew of the handguns in the bedroom.

¶ 35 Furthermore, defendant stated that he was given the firearms by Little Harry and he himself placed them behind the dresser. Whether or not he was holding the firearms for someone else, defendant had control over them when he took the weapons and decided where to hide them. Since he hid the firearms behind the dresser, it is also reasonable to infer that he was the only person in the apartment who knew of their existence and location. Defendant clearly had access to the bedroom, so it does not matter whether the bedroom belonged to another. See *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 43 (finding that it is "settled law that constructive possession of contraband can be established even where possession is joint or others have access to the area where the contraband is recovered").

¶ 36 The trier of fact is not required to disregard inferences that flow normally from the evidence, nor seek all possible explanations consistent with innocence and elevate them to reasonable doubt. *People v. Newton*, 2018 IL 122958, ¶ 24. In other words, the State need not disprove or rule out all possible factual scenarios in order to sustain its burden. *Id*. ¶ 27. Taking the evidence in the light most favorable to the State as we must, we find that a reasonable trier of fact could find that defendant had knowledge of and possessed the firearms recovered from behind the dresser.

¶ 37     Finally, defendant argues that this court should follow the third district case of *People v. Wise*, 2019 IL App (3d) 170252, *aff'd*, 2021 IL 125392. *Wise* openly disagreed with a number of appellate court cases to find that possession of contraband "on or about his person" in section 24-1.1 means the firearm must be "on the person or 'in such close proximity that it can be readily used as though on the person.' " *Id.* ¶ 21 (quoting *People v. Liss*, 406 Ill. 419, 422 (1950)). The morning of oral argument in this case, the supreme court issued its opinion in *People v. Wise*, 2021 IL 125392, but the parties disagreed as to the applicability of its determination here.

¶ 38     In *Wise*, the defendant was the driver of a van that police stopped for speeding. When the officer spoke to the defendant, he noticed the odor of burnt cannabis coming from the van. After backup arrived, the officers searched the van and found a firearm and two rounds of ammunition in a rear passenger compartment. They also found a large amount of prescription pills in the defendant's handbag. He was subsequently charged with unlawful possession of a firearm by a felon under section 24-1.1(a) of the Criminal Code and unlawful possession of a substance containing oxycodone in violation of the Illinois Controlled Substances Act. *Id.* ¶¶ 3-4.

¶ 39     At trial, the officer who stopped the van testified that the defendant told him his brother owned the van. He also told the officer that he knew about the gun and it belonged to his brother's friend who occasionally borrowed the van. The gun was found about 5 to 10 feet from the driver, and the officer did not think it was possible for the defendant to reach the gun from the driver's seat. Instead, another passenger was seated closer to the weapon. The officer never saw the defendant holding the gun nor was the gun tested for fingerprints. *Id.* ¶¶ 6-7. Two passengers who were in the van with the defendant both testified that the gun did not belong to him.

¶ 40    The defendant testified that he and two friends were travelling from Iowa to Kentucky and back. Defendant drove the entire trip except for the first 10 miles or so. He acknowledged that he was speeding when the police stopped him in Illinois; however, he denied knowing of the presence of the gun in the van. He never saw or touched the gun in the van, and he never sat in the third row of the van where the gun was located. He also testified that he took various medications for high blood pressure, diabetes, depression, and chronic back pain. *Id.* ¶ 11.

¶ 41    The trial court found the defendant guilty of unlawful possession of a weapon by a felon but not guilty of the unlawful drug possession charge. *Id.* ¶ 12. The appellate court reversed his conviction, however, finding that to be guilty of unlawful possession of a firearm under section 24-1.1(a), the firearm must be on the person or in such close proximity that it was accessible for use. *Id.* ¶¶ 14, 18.

¶ 42    Our supreme court did not agree that "on or about his person" in section 24-1.1(a) requires the firearm to be on the person or in a place that is immediately accessible to the person. Instead, the court interpreted the phrase as meaning a convicted felon cannot have actual (on his person) or constructive (about his person) possession of a firearm. *Id.* ¶ 24. The State presented no evidence that the defendant was in physical possession of the gun. *Id.* ¶ 26.

¶ 43    In determining whether he had constructive possession of the gun, the court utilized the well-settled rule that to establish constructive possession, the State must show the defendant (1) knew of the presence of the gun and (2) had exclusive and immediate control over the area where it was found. *Id.* ¶ 28. The officer testified that defendant knew of the gun in the van. Regarding the control element, the court noted that proximity to the weapon was one factor to consider and the defendant was not within reach of the gun while driving the van. Also, he did not

own the van, and another passenger was seated closest to the gun. No evidence was presented that the defendant touched the gun. From these facts, the court concluded that "the State presented insufficient evidence to prove beyond a reasonable doubt that defendant possessed the weapon in violation of section 24-1.1(a)." *Id.* ¶ 34.

¶ 44 *Wise* does not affect our determination here. The court did not hold that close proximity to the recovered weapon is required to prove constructive possession under section 24-1.1(a). The supreme court determined that proximity to the weapon is one factor to consider in the constructive possession analysis, and it gave that factor some significance where the defendant did not own the gun or the van where the weapon was found, he could not reach the gun from the driver's seat, and another passenger was seated closest to the gun. Here, as we discussed, the evidence supported defendant's conviction where he had knowledge of the guns behind the dresser, and he exercised immediate and exclusive control over the area where they were found.

¶ 45                                    IV. CONCLUSION

¶ 46    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 47    Affirmed.

**No. 1-19-1378**

| | |
|---|---|
| **Cite as:** | *People v. Hines*, 2021 IL App (1st) 191378 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-CR-14343; the Hon. Thomas Joseph Hennelly, Judge, presiding. |
| **Attorneys for Appellant:** | Justin K. Beyer and John J. O'Malley, of Seyfarth Shaw LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Daniel Piwowarczyk, Assistant State's Attorneys, of counsel), for the People. |