2022 IL App (1st) 210553-U

No. 1-21-0553

Order filed October 12, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 MC 3001164 |
| | ) | |
| RHY'ANNE BURGER, | ) | Honorable |
| | ) | Steven Wagner, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice McBride and Justice Gordon concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Defendant's convictions for battery and resisting a peace officer affirmed where the evidence established that defendant knowingly made physical contact of an insulting nature with an individual and resisted arrest by a peace officer.

¶ 2    Following a bench trial, defendant Rhy'anne Burger was found guilty of one count of battery and one count of resisting a peace officer.[1] The trial court sentenced defendant to 12 months

_____

[1] Defendant's first name also appears in the record as "Ryean," but we adopt the spelling used by the parties and as it appears in the report of proceedings during her trial testimony.

of court supervision and anger management counseling on the battery charge and two (2) days in the Cook County Department of Corrections on the resisting a peace officer charge. On appeal, defendant contends the State failed to prove her guilty beyond a reasonable doubt of battery and resisting a peace officer due to inconsistencies and discrepancies in the testimony of the State's witnesses. We affirm.

¶ 3    Defendant was charged by misdemeanor complaints with one count of battery (720 ILCS 5/12-3(a)(2) (West 2020)) and one count of resisting a peace officer (720 ILCS 5/31-1(a) (West 2020)) based on an incident occurring on April 25, 2020. The charges alleged that defendant knowingly used her hands to intentionally strike a police officer on his torso and resisted arrest after being informed she was under arrest for battery to the police officer.

¶ 4    At trial, Arlington Heights police officer Kevin Adams testified that on April 25, 2020, around 5:06 p.m., he was dispatched to an address on East Palatine Road in Arlington Heights ("the premises") after a caller reported wanting someone removed from her apartment. The caller failed to provide an apartment number and did not answer follow-up calls from dispatch. When Adams and his partner, Officer John Vinson, entered the premises, they immediately heard male and female voices yelling and screaming coming from an apartment. They knocked on the apartment door and announced their office. Defendant, whom Adams identified at trial, opened the door. Defendant "immediately started yelling and screaming at [the officers]" that "she didn't want [them] there and that she did not call the police." Adams informed defendant that the officers wanted to search the apartment "due to the appearance of [a] domestic situation" to ensure everyone's safety, but defendant stated that "she did not want [them] there at all."

¶ 5    The officers proceeded to conduct a protective sweep of the apartment and found defendant's young son, who was crying, and his father, Tommy Wilson, in the back bedroom. While the officers were conducting the protective sweep, defendant had followed them to the back bedroom. She was "wa[v]ing her fist and yelling at [them] to get out." Defendant's tone was loud, and she seemed angry.

¶ 6    Adams testified that Officer Schoney[2] arrived and came to the bedroom where everyone was located. The officers advised defendant and Wilson that they needed to speak with them separately to ensure no domestic battery occurred and the child was safe. Vinson escorted defendant to the living room and then returned to the bedroom to speak with Wilson. Adams attempted to speak with defendant in the living room but could not determine what occurred as she continued to wave her hands and yell at him to leave the apartment.

¶ 7    Defendant then ran from the living room to the bedroom, where Wilson and Vinson were located. Adams stood in the doorway of the bedroom, and Vinson asked defendant to return to the living room. Adams testified that "defendant turned around and raised her fist at [him] with her fist clenched as if she was going to strike [him]." When defendant had her fist clenched in the air, Vinson grabbed her wrist, put it down, and advised her to stop and try to calm down so the officers could speak with her and Wilson. Defendant then "turned to Officer Vinson with both hands clenched and struck [him] [once] in the chest with both hands." Vinson informed defendant she was under arrest, and she "was pulling her arms away and trying to resist being handcuffed." Adams and Vinson eventually placed defendant under arrest and transported her to the police station.

_____

[2] Officer Schoney's first name does not appear in the record.

¶ 8    On cross-examination, Adams testified that he and Vinson went to the premises based on an "unwanted subject" report. Adams reiterated that defendant opened the door and initially did not allow them to enter, but she eventually let them in to conduct a protective sweep. He did not notice any evidence of domestic violence. Defendant demanded that the officers leave because things were taken care of, and she did not want any problems.

¶ 9    Adams did not recall whether defendant had a cell phone in her hand or if she was on the phone with dispatch when Vinson grabbed her. He observed defendant hit Vinson with both hands in a striking manner while Vinson was executing an arm maneuver on her. The entire incident, from the time they arrived until defendant was placed in the police vehicle, lasted approximately 20 minutes. There was no body camera footage of the incident.

¶ 10    Arlington Heights police officer Vinson testified that he and other officers were dispatched to the premises for a "domestic trouble disturbance related incident." Upon arrival, he heard yelling coming from an apartment. He knocked on the door, announced their office, and defendant answered the door. Defendant was yelling at them that they were not needed. He explained to her that they needed to check the apartment to ensure everyone's safety, but she did not want them to do so.

¶ 11    Vinson stated the officers conducted a protective sweep of the apartment as part of the investigation and started in the back bedroom where they heard a male voice. Vinson noticed Wilson and the child in the bedroom. Defendant was initially in the living room with the other officers before she came to the door of the bedroom and placed herself between him and Wilson. She stated he was not needed anymore and could leave. Vinson described her tone of voice as angry.

¶ 12    Vinson asked defendant to go into the living room so he could speak with Wilson, but she refused to move. He physically escorted defendant to the living room, and he returned to the bedroom. Defendant "barg[ed]" into the bedroom and again put herself between him and Wilson. Adams came into the bedroom, and defendant "turned and put her hands up to a fight stance with fists closed yelling at [them] to leave." He "assume[d]" that Adams "might be battered at the time," so he grabbed defendant's hands and pulled her further into the bedroom away from Adams.

¶ 13    Defendant continued yelling, and Vinson attempted to deescalate the situation by explaining to her that once the officers spoke with her and Wilson to determine if no crime had occurred, they would leave. When he tried to deescalate the situation, she "took both fists and started beating at [his] chest." Defendant did not have consent to touch him. Vinson put defendant's hands behind her back and informed her that she was under arrest for battery. Defendant was still pulling her arms and yelling.

¶ 14    On cross-examination, Vinson testified that there were initially four officers on the scene responding to the possible domestic disturbance complaint. There was no evidence in the living room indicative of injuries, violent acts, domestic battery, or a struggle. Defendant continuously asked him and his fellow officers to leave, indicating that the situation had calmed down.

¶ 15    Since defendant was being uncooperative by yelling and waving her fists, Vinson made an "executive decision" to have her leave the bedroom so he could talk to Wilson in that room. Defendant needed to be removed from the bedroom twice. The first time Vinson used an arm maneuver that consisted of him placing one hand on her elbow and the other on her wrist, and the second time, she was under arrest.

¶ 16    Vinson acknowledged that defendant had a cell phone at some point before the arrest as he recalled her briefly calling 911, but he could not recall whether she had it in her hand at the time he used the arm maneuver. When he grabbed defendant to deescalate the situation, he "let go of her," then "she battered [him]." There was no body camera footage of the incident.

¶ 17    On redirect, Vinson described defendant's demeanor as antagonistic and aggressive before the arrest, but she calmed down during the transport to the police station. He spoke with defendant after her transport to the police station.

¶ 18    Arlington Heights police officer Schoney testified that he responded to a "possible domestic situation" at the premises around 5:06 p.m. on the day of the incident. He arrived alone. When he entered the apartment, Vinson and Adams were present, and defendant was yelling and screaming at them that she did not want them there. He made an in-court identification of defendant. Defendant was in the bedroom when he arrived. She was not under arrest at that time.

¶ 19    Schoney testified that defendant "kind of shove[d]" Vinson on his chest. Vinson attempted to handcuff her, "but she moved away from him and moved her arms in an attempt to not let [them] do that." Defendant was told she was under arrest. Schoney asked her to comply, but she did not do so and was uncooperative.

¶ 20    On cross-examination, Schoney testified that when he arrived, Adams and Vinson were in the bedroom and partially in the hallway. Defendant was in the bedroom before she was escorted to the hallway. He did not recall whether defendant wanted Wilson out of the apartment or if she had a cell phone.

¶ 21    Defendant testified on her own behalf that the day of the incident, April 25, 2020, was her son's third birthday. She called Wilson, who stated he was coming over. She told Wilson he was

not welcome, but he still came to the apartment. Wilson was banging on the door and insisted on coming inside. Defendant eventually allowed Wilson inside because he had previously banged on her door, and her landlord told her that she would be evicted if it happened again. The situation did not improve once he was inside, and they had an argument. Defendant called the police to have Wilson removed when he would not leave. After making the call, Wilson stated he would leave. She attempted to call the police to tell them not to send anyone, but three officers arrived anyway.

¶ 22    When the officers arrived, she let them in and led them to the bedroom, where her son and Wilson were located. She told the officers that everything was okay, and she did not need them anymore. The officers did not leave and instructed her to go in the hallway so they could talk to her and Wilson separately. She told the officers to talk to Wilson in the hallway instead because it was her apartment. Defendant explained that Wilson did not belong in her house, and she did not want him in her house by himself. The officers insisted that she go into the hallway, but she did not do so. She "never tried to force [her]self back into the bedroom." She "[led] them into the bedroom[,] and [she] was in the bedroom the entire time because [she] was dragged out." She "never punched an [o]fficer" and "never made any physical contact."

¶ 23    Defendant had her cell phone during the entire encounter. Vinson grabbed her arms while she was on the phone with the police and placed her in handcuffs. She never tried to break away from the officers. Defendant was "angry at the situation," including Wilson still being in her apartment, being asked to leave the bedroom, and being unable to comfort her crying son.

¶ 24    On cross-examination, defendant testified that she was upset that Wilson came to her apartment uninvited. When Wilson first arrived at the apartment, there was yelling, but they did

not fight. The officers told her it was a domestic situation, but she explained that everything was okay, and they were no longer needed.

¶ 25    Defendant did not want to go into the hallway when instructed because it was her home, and "they need[ed] to talk to him in the hallway because he [did] not stay [t]here." Her landlord did not want Wilson on the property, and she did not feel comfortable with him in her apartment while she was in the hallway. Her demeanor was "firm" at that time, but she did not yell or throw her arms. She was a naturally loud person.

¶ 26    Defendant called the police again because she felt that "the situation was not right [and] they were going about the situation incorrectly." The police were aggressive and speaking with an "attitude" of "you [are] going to do what I say because I can make you do what I say." She "didn't have to listen because [she] was not under arrest." Defendant stated she was eventually arrested for "calling the police," but then stated she did not know why she was arrested. She denied raising her voice, fist, or arm, but then corrected herself and stated that her arm was raised because she was on the phone calling the police.

¶ 27    When she arrived at the police station and asked why she was arrested, an officer "didn't know." Another officer stated it was because she hit the officer. A third officer said "battery," but another officer said it was not a battery, but because she "touched a mask." When she was in handcuffs, "it was clear that [she] was upset" because she "didn't do anything." She found it "kind of frustrating" because it was her son's birthday. It "was very calm" when the police arrived at her apartment.

¶ 28    The trial court found defendant guilty of battery and resisting a peace officer, stating it found the officers' testimony credible. Defendant filed posttrial motions for a new trial and to

reconsider, and the trial court denied both motions. Defendant was sentenced to 12 months of court supervision and anger management counseling for battery and 2 days in the Cook County Department of Corrections, time considered served, for resisting a peace officer. Defendant timely appealed.

¶ 29    On appeal, defendant argues the evidence was insufficient to prove her guilty beyond a reasonable doubt of battery and resisting a peace officer due to inconsistencies and discrepancies in the officers' testimony concerning whether she had a cell phone in her hand, which officers were at the scene and at what time, and why she was arrested.

¶ 30    When a defendant challenges the sufficiency of the evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the State, " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The State bears the burden of proving beyond a reasonable doubt every element of an offense. *People v. Gray*, 2017 IL 120958, ¶ 35. It is for the trier of fact to fairly determine the credibility of witnesses and the weight of evidence presented, and the reviewing court will not substitute its judgment for that of the trier of fact on these issues. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). It is also the trier of fact's duty to make any reasonable inferences from the testimony and other evidence presented. *People v. Hines*, 2021 IL App (1st) 191378, ¶ 31. We will not reverse a criminal conviction unless the evidence is so "unreasonable, improbable, or unsatisfactory that a reasonable doubt of the defendant's guilt remains." *Id.*

¶ 31    As charged here, an individual commits the offense of battery when "he or she knowingly without legal justification by any means *** makes physical contact of an insulting *** nature

with an individual." 720 ILCS 5/12-3(a)(2) (West 2020). Defendant challenges the evidence as to the knowledge and physical contact elements but does not challenge whether the physical contact was of an insulting nature.

¶ 32     An individual acts knowingly "when he or she is consciously aware that that result is practically certain to be caused by his conduct." 720 ILCS 5/4-5(b) (West 2020). Knowledge can be inferred from a defendant's conduct prior to the physical contact and the manner of the contact itself. *People v. Phillips*, 392 Ill. App. 3d 243, 259 (2009).

¶ 33     After viewing the evidence in the light most favorable to the State, we find the evidence was sufficient to establish that defendant knowingly made physical contact of an insulting nature with her hands to Officer Vinson's chest. The evidence showed that defendant did not want the officers inside the apartment. She refused to cooperate with the officers when they attempted to speak with her and Wilson individually, continued to insert herself between Wilson and Vinson, and repeatedly yelled at the officers. The situation escalated when defendant raised her hands at Officer Adams in a fighting position. Observing defendant's actions, Vinson attempted to deescalate the situation by grabbing defendant's hands and pulling them down. The officers' testimony showed that, when Vinson released defendant's hands, she turned and made physical contact with Vinson without his consent, using her closed fists to, as Vinson described it, start "beating" at his chest.

¶ 34     Defendant's demeanor and actions in the moments before she hit Vinson with closed fists, particularly her act of turning to Vinson after he let her go, creates a reasonable inference that her contact with his chest was neither accidental nor incidental, *i.e.*, that she knowingly made the physical contact with Vinson on his chest. Defendant does not argue that the physical contact was

not insulting. Nevertheless, we note that, as she made the physical contact during her angry interactions with police, and Vinson described the contact as a beating and immediately attempted to arrest her, the trier of fact could reasonably infer the knowing contact was in fact insulting to Vinson. See *People v. Fultz*, 2012 IL App (2d) 101101, ¶ 49 (to prove battery, the victim need not testify he was insulted or provoked by the physical contact; "the trier of fact may take into account the context in which a defendant's contact occurred to determine whether the touching was insulting or provoking"). The positive testimony of a single, credible witness is sufficient to support a conviction. *People v. Little*, 2018 IL App (1st) 151954, ¶ 54. The officers' testimony here, which the trial court found credible, was sufficient to establish that defendant knowingly made physical contact of an insulting nature with her hands to Vinson's chest.

¶ 35    Defendant argues the evidence was insufficient to prove she made any physical contact to Vinson's chest because the officers testified inconsistently as to the type of physical contact made to Vinson. She notes that Vinson testified the physical contact was a beating, Adams testified it was a single hit with her fists, and Officer Schoney testified it was a shove. However, whether the physical contact was a single hit with closed fists, a shove, or a beating is immaterial as the officers testified consistently and unequivocally that defendant made purposeful physical contact to Vinson's chest with her hands. See *People v. Nelson*, 2021 IL App (1st) 181483, ¶ 57 (even where witnesses do not have identical testimony, a reversal is unwarranted). Based on the totality of the evidence and all reasonable inferences therefrom, we conclude that a rational trier of fact could find defendant guilty of battery beyond a reasonable doubt. *People v. Faulkner*, 2017 IL App (1st) 132884, ¶ 35 (all reasonable inferences drawn from the record must be taken in favor of the State).

¶ 36    As to the resisting a peace officer charge, an individual commits the offense of resisting a peace officer when she "knowingly resists *** the performance by one known to the person to be a peace officer *** of any authorized act within his or her official capacity" (720 ILCS 5/31-1(a) (West 2020)), which here was her arrest. It is well established that an arrest by a peace officer is considered an authorized act under the statute. *City of Champaign v. Torres*, 214 Ill. 2d 234, 242 (2005). Resisting arrest is more than verbally arguing with an officer, even if the language is abusive. *People v. Long*, 316 Ill. App. 3d 919, 927 (2000). An individual resists arrest when he or she commits a "physical act of resistance or obstruction, that is, a physical act that impedes, hinders, interrupts, prevents or delays the performance of the officer's duties, such as going limp, forcefully resisting arrest, or physically helping another party to avoid arrest." *People v. Haynes*, 408 Ill. App. 3d 684, 689-90 (2011).

¶ 37    Defendant does not dispute that she knew Vinson, Adams, and Schoney were peace officers performing their official duties. Thus, we need only determine whether she knowingly engaged in any physical act to resist arrest.

¶ 38    After viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could find that defendant knowingly resisted a peace officer. The evidence showed that defendant moved and pulled her arms away as Vinson attempted to place her under arrest for striking him. Adams and Schoney additionally testified that defendant resisted being placed in handcuffs. Defendant repeatedly engaged in this resisting conduct, even after Schoney requested that she comply and Vinson informed her that she was under arrest. It is reasonable to infer from her conduct of pulling her arms and moving away from the officers that defendant was knowingly resisting the arrest. See *People v. Swenson*, 2020 IL 124688, ¶ 35 (all reasonable

inferences are construed in favor of the finding of guilt). Accordingly, a rational trier of fact could find the officers' testimony sufficient to establish that defendant knowingly committed an act of physical resistance against the peace officers as they tried to arrest her. See *People v. Brouder*, 168 Ill. App. 3d 938, 943 (1988) (testimony from an officer involved in the arrest regarding defendant's actions during the arrest is sufficient to sustain a conviction of resisting a peace officer).

¶ 39    In reaching our conclusions, we considered defendant's claim that she was not proven guilty of battery and resisting a peace officer based on inconsistencies in the officers' testimony as to whether she had a cell phone in her hand, which officers were at the scene and at what time, and why she was arrested. We find no merit in her claim because these minor inconsistencies do not concern elements of either offense. See *People v. Bradford*, 187 Ill. App. 3d 903, 916 (1989) ("[m]inor inconsistencies in testimony do not constitute grounds for reversal of a criminal conviction"). Moreover, any inconsistencies in the officers' testimony impact the weight given to their testimony, which is for the trier of fact, not this court, to determine. See *People v. Tenney*, 205 Ill. 2d 411, 428 (2002) (the trier of fact determines the credibility of witnesses, the weight given to their testimony, the inferences drawn from the evidence, and resolves conflicts or inconsistencies in the evidence). The trial court here found the officers credible.

¶ 40    Defendant also challenges the trial court's credibility findings. She argues her version of the events was more plausible than the three officers' version. However, the trial court was not required to accept defendant's version of the events over the version of events as testified to by the officers. See *Little*, 2018 IL App (1st) 151954, ¶ 54 (positive and credible testimony of a single witness is sufficient to convict, even if contradicted by defendant's testimony). Although defendant disagrees with the trial court's credibility determinations, we cannot substitute our

judgment for that of the trial court on credibility. *Siguenza-Brito*, 235 Ill. 2d at 224. Defendant further argues that there was no body-worn camera footage to corroborate the officers' version of events, but it is well settled that physical evidence is unnecessary to corroborate an eyewitness account. *People v. Corral*, 2019 IL App (1st) 171501, ¶ 91.

¶ 41    Defendant's challenge to the sufficiency of the evidence essentially asks this court to substitute our judgment for that of the trier of fact and resolve conflicts in the evidence in her favor. This we cannot do. *Siguenza-Brito,* 235 Ill. 2d at 224. The evidence here was consistent that defendant knowingly made physical contact with Vinson's chest using her hands in an insulting manner and physically resisted being handcuffed. Accordingly, the evidence of battery and resisting a peace officer was not so "unreasonable, improbable, or unsatisfactory that a reasonable doubt of the defendant's guilt remains." *Hines*, 2021 IL App (1st) 191378, ¶ 31.

¶ 42    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 43    Affirmed.